SUAREZ, J.
General Electric Company and General Electric Capital Corporation (“GE”) appeal from a non-final order denying GE’s motion for pre-judgment writ of attachment or pre-judgment writ of garnishment against property of Chuly International, LLC (“Chuly”). We reverse.
In 2002, GE leased certain medical equipment to Millennium Open MRI. Millennium’s obligations were unconditionally guaranteed by Jorge de Cespedes. Millennium defaulted, and in 2005, GE sued Millennium for breach of those lease agreements, and de Cespedes personally to enforce the guaranty [“de Cespedes lawsuit”]. In 2009, GE won a final judgment against Millennium and co-defendants for $1.2 million. In 2004, before GE filed its complaint against Millenium, de Cespedes gave a $1.75 million loan to his then-girlfriend, Maria Palacio and another $1.74 million loan to her company, Chuly, which was formed to own and manage certain real property. Chuly purchased an office building with the money. Neither Palacio nor Chuly made any payments on the loans. In 2007, about midway through the de Cespedes lawsuit, de Cespedes forgave the loans to Palacio and Chuly.
A parallel action against de Ces-pedes for Medicare fraud took place in federal district court. The loans and loan forgiveness were discovered by GE, and it sought to intervene when it learned the federal court ordered the sale of Chuly’s real property. The federal court denied GE’s motion and allowed the sale. The sale proceeds were placed in the federal court registry. GE then filed the current case in state court against Chuly, seeking a determination that the Chuly loan forgiveness by de Cespedes was a fraudulent transfer under chapter 726, Florida Statutes.[1] GE filed a verified motion for a prejudgment writ of attachment or garnishment against Chuly for the amount of *327 the Chuly loan and was willing to post a bond in excess of the amount it sought from Chuly. After an evidentiary hearing, the circuit court summarily denied GE’s motion for prejudgment writ of attachment or garnishment. GE appeals.
A prejudgment attachment is available against assets fraudulently transferred from a debtor and held in the name of another. Cerna v. Swiss Bank Corp. (Overseas), 503 So.2d 1297 (Fla. 3d DCA 1987).[2] “Upon motion by plaintiff, a writ of attachment may issue when the grounds relied on for the issuance of the writ clearly appear from specific facts shown by a verified complaint or a separate affidavit of the plaintiff ...,” and all applicable requirements of the attachment statute are met. § 76.08, Fla. Stat. (2018). In an action for relief against an allegedly fraudulent transfer sought pursuant to Chapter 726, Florida Statutes, a creditor may seek an attachment against the transferred asset. § 726.108(l)(b), Fla. Stat. (2013). Because the determination of actual fraudulent intent can be difficult, courts look to certain “badges of fraud” to determine whether the transfer was made with the intent to defraud creditors. Beal Bank SSB v. Almand & Assocs., 780 So.2d 45, 60 (Fla.2001). Those “badges of fraud” are set forth in section 726.105, Florida Statutes (2013).[3] “The existence of badges of fraud creates a prima facie case and raise a rebuttable presumption that the transaction is void.” Stephens v. Kies Oil Co., Inc., 386 So.2d 1289, 1290 (Fla. 3d DCA 1980). Consideration may also be given to factors other than those listed. See In re Miller, 188 B.R. 302, 305-06 (Bankr.M.D.Fla.1995). Courts may take into account the circumstances surrounding the conveyance. Kirk v. Edinger, 380 So.2d 1336, 1337 (Fla. 5th DCA 1980). After receipt of this evidence, the burden shifts *328 to the debtor or transferor to show the transfer was made without intent to “delay, hinder or defraud creditors.” See Mejia v. Ruiz, 985 So.2d 1109, 1114 (Fla. 3d DCA 2008). The very function of a writ of attachment is to serve as a lien upon property that may be the subject of execution upon a later-obtained judgment. See Tilghman v. U.S. Fid. & Guar. Co., 90 Fla. 282, 105 So. 823 (1925). See also Cerna, 503 So.2d 1297, 1298 (Fla. 3d DCA 1987).
At the hearing on GE’s motion for garnishment or attachment, GE presented competent, substantial evidence to support issuance of the writ. GE was not required at that time to prove by a preponderance of the evidence that the loan forgiveness was, actually, a fraudulent transfer.[4] GE merely had to raise a rebuttable presumption of fraudulent intent by asserting the existence of certain badges of fraud, thereby creating a prima facie case for fraudulent transfer to be determined later in the litigation between the parties. GE’s complaint clearly alleges several of these badges of fraud, and adequately stated a cause of action for fraudulent transfer. See Mejia, 985 So.2d 1109, 1113 (Fla. 3d DCA 2008) (noting that while a single badge of fraud may amount only to a suspicious circumstance, a combination of badges will justify a finding of fraud); Banner Constr. Corp. v. Arnold, 128 So.2d 893, 896 (Fla. 1st DCA 1961) (“While a badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable.”).
The record reveals that, of these statutory factors, GE showed the transfer was made to an insider (two $1.75 million loans, one to de Cespedes’ girlfriend and one to her company); the transfer was made without receiving a reasonably equivalent value in exchange for the transfer or obligation (no consideration and the loans were never repaid); the transfer or obligation was disclosed or concealed (the loans were not publically recorded); and the transfer was made shortly before or shortly after a substantial debt was incurred (loans were made prior to, and forgiven during, the de Cespedes’ lawsuit). § 726.105(2), Fla. Stat. (2012). Chuly did not present sufficient evidence to rebut the initial presumption of fraudulent transfer. Further, GE asserted at the hearing that it would provide a bond in the amount of $3,200,000.00, more than twice the amount of the debt sought against Chuly. See § 76.12, Fla. Stat. (2013).
GE amply demonstrated, by competent substantial evidence, sufficient statutory grounds for prejudgment attachment or garnishment of the sale proceeds in order to secure its judgment debt, in the event a judgment is rendered in GE’s favor at the conclusion of GE’s fraudulent transfer claim against Chuly. See Zeskind v. Jockey Club Condo. Apartments, Unit No. II, Inc., 468 So.2d 1021, 1022 (Fla. 3d DCA 1985) (finding injunction was based on substantial, competent evidence adduced below). We reverse the trial court’s order denying the verified motion and remand with directions to authorize the issuance of a prejudgment writ of attachment or garnishment, and to set the amount of a reasonable bond.
Reversed and remanded.

. A fraudulent conveyance action is an action by a creditor against a transferee directed against a particular transaction, which, if de-dared fraudulent, is set aside thus leaving the creditor free to pursue the asset, or it is an action against a transferee who has received *327 an asset by means of a fraudulent conveyance and should be required to either return the asset or pay for the asset (by way of a judgment and execution). A fraudulent conveyance action, under section 726.108, is not an action against a debtor for failure to pay an amount owing from a prior judgment. Yusem v. S. Fla. Water Mgmt. Dist., 770 So.2d 746, 749 (Fla. 4th DCA 2000).

. Chuly argues that it is not a "debtor," and that the Chuly property was not owned by de Cespedes, a judgment debtor by virtue of guaranteeing loans to the primary debtor, Millenium. We find that argument unpersuasive where “it seems clear that prejudgment attachment is available against assets which are held in the name of another and which have either been fraudulently transferred from the debtor or remain equitably owned by him.” Cema, 503 So.2d at 1298.

. Section 726.105, Florida Statutes (2013), provides, in part:
(2) In determining actual intent under paragraph (l)(a), consideration may be given, among other factors, to whether:
(a)The transfer or obligation was to an insider.
(b) The debtor retained possession or control of the property transferred after the transfer.
(c) The transfer or obligation was disclosed or concealed.
(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e) The transfer was of substantially all the debtor’s assets.
(f) The debtor absconded.
(g) The debtor removed or concealed assets.
(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

. The level of proof required to show that a transfer is fraudulent is by the preponderance of the evidence. Wieczoreck v. H & H Builders, Inc., 475 So.2d 227 (Fla.1985). Proof of fraud requires proof of intent. See Mejia v. Ruiz, 985 So.2d 1109, 1113 (Fla. 3d DCA 2008).